Robert A. Sacks (SBN 150146)
sacksr@sullcrom.com
Brian R. England (SBN 211335)
englandb@sullcrom.com
Edward E. Johnson (SBN 241065)
johnsonee@sullcrom.com
SULLIVAN & CROMWELL LLP
1888 Century Park East, Suite 2100
Los Angeles, California 90067-1725
Tel.:  (310) 712-6600
Fax:  (310) 712-8800

Frank L. Bernstein (SBN 189504)
fbernstein@kenyon.com
KENYON & KENYON LLP
1801 Page Mill Road, Suite 210
Palo Alto, California 94304-1216
Tel.:  (650) 384-4700
Fax:  (650) 384-4701

*Attorneys for Plaintiff j2 Global, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| j2 GLOBAL, INC.,<br><br>                    Plaintiff,<br><br>         v.<br><br>OPEN TEXT CORPORATION and EASYLINK SERVICES INTERNATIONAL CORPORATION,<br><br>                    Defendants.<br><br>AND RELATED CROSS-ACTION | Case No. CV 12-7968 DDP (AJWx)<br><br>**PLAINTIFF AND COUNTERCLAIM-DEFENDANT j2 GLOBAL, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS THREE AND FOUR OF DEFENDANTS' AMENDED COUNTERCLAIM PURSUANT TO F.R.C.P. 12(b)(6)**<br><br>Date:           February 11, 2013<br>Time:          10:00 a.m.<br>Courtroom: 3 |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on February 11, 2013, at 10:00 a.m., or as soon thereafter as the matter may be heard in the United States District Court, Central District of California, located at 312 N. Spring Street, Los Angeles, California, 90012, Plaintiff and Counterclaim-Defendant j2 Global, Inc., through its undersigned counsel, will, and hereby does, move to dismiss Counts Three and Four of Defendants Open Text Corporation and EasyLink Services International Corporation's Amended Counterclaim [Docket No. 34] pursuant to Fed. R. Civ. P. 12(b)(6).

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the complete files and records in this action, and such additional material as may be considered at the hearing.

This Motion is made following conferences of counsel pursuant to L.R. 7-3 which took place on November 30, 2012, December 3, 2012 and January 7, 2013.

Dated:  January 11, 2013                    Respectfully submitted,

/s/ Robert A. Sacks
Robert A. Sacks (SBN 150146)
Brian R. England (SBN 211335)
Edward E. Johnson (SBN 241065)
SULLIVAN & CROMWELL LLP
1888 Century Park East, Suite 2100
Los Angeles, California 90067-1725
(310) 712-6600
(310) 712-8800 facsimile

Frank L. Bernstein (SBN 189504)
KENYON & KENYON LLP
1801 Page Mill Road, Suite 210
Palo Alto, California 94304-1216
(650) 384-4700
(650) 384-4701 facsimile

*Attorneys for Plaintiff and Counterclaim-Defendant j2 Global, Inc.*

## **TABLE OF CONTENTS**

Page

INTRODUCTION ..............................................................................................1

BACKGROUND ................................................................................................1

ARGUMENT ......................................................................................................3

    I.    Legal Standard. ................................................................................3

    II.   Defendants' Tortious Interference Claim Should Be Dismissed. ...........4

        A.    The Noerr-Pennington Doctrine Bars Defendants' Tortious Interference Claim. ...........................................................4

        B.    Defendants' Tortious Interference Claim Is Barred by the California Litigation Privilege. ...................................................6

        C.    Defendants Have Not Adequately Pled a Tortious Interference Claim. ...........................................................................8

    III.  Defendants' Unfair Competition Claim Is Entirely Derivative of Their Tortious Interference Claim and Should Be Dismissed for the Same Reasons. ...........................................................10

CONCLUSION .................................................................................................12

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Ashcroft* v. *Iqbal*,
  556 U.S. 662 (2009) ...................................................................................... 3

*Bell Atlantic Corp.* v. *Twombly*,
  550 U.S. 544 (2007) ...................................................................................... 3

*Bylin Heating Sys.* v. *M&M Gutters, LLC*,
  2008 U.S. Dist. LEXIS 21253 (E.D. Cal. Mar. 18, 2008) ................................. 8

*Clegg* v. *Cult Awareness Network*,
  18 F.3d 752 (9th Cir. 1994) ........................................................................ 3-4

*eCash Techs., Inc.* v. *Guagliardo*,
  210 F. Supp. 2d 1138 (C.D. Cal. 2001) .......................................................... 7

*Gen-Probe, Inc.* v. *Amoco Corp., Inc.*,
  926 F. Supp. 948 (S.D. Cal. 1996) ................................................................. 4

*Globetrotter Software, Inc.* v. *Elan Computer Group, Inc.*,
  362 F.3d 1367 (Fed. Cir. 2004) .................................................................. 4, 5

*Mallinckrodt, Inc.* v. *Medipart, Inc.*,
  976 F.3d 700 (Fed. Cir. 1992) ........................................................................ 8

*McGlinchy* v. *Shell Chem. Co.*,
  845 F.2d 802 (9th Cir. 1988) .......................................................................... 4

*Michaluk, D.O.* v. *Vohra Health Services, P.A.*,
  2012 WL 3993940 (E.D. Cal. Sept. 11, 2012) ............................................. 10

*In re Peerless Sys. Corp. Sec. Litig.*,
  182 F. Supp. 2d 982 (S.D. Cal. 2002) ............................................................ 3

*Prof'l Real Estate Investors, Inc.* v. *Columbia Pictures Indus., Inc.*,
  508 U.S. 49 (1993) ......................................................................................... 4

*Reid-Ashman Mfg.* v. *Swanson Semiconductor Serv., L.L.C.*,
  2007 U.S. Dist. LEXIS 37665 (N.D. Cal. May 10, 2007) ............................... 8

*Scosche Indus., Inc.* v. *Visor Gear, Inc.*,
  121 F.3d 675 (Fed. Cir. 1997) ..................................................................................... 8

*Sharper Image Corp.* v. *Target Corp.*,
  425 F. Supp. 2d 1056 (N.D. Cal. 2006) ....................................................................... 7

*Silicon Knights, Inc.* v. *Crystal Dynamics, Inc.*,
  983 F. Supp. 1303 (N.D. Cal. 1997) .......................................................................... 11

*Sosa* v. *DIRECTV*,
  437 F.3d 923 (9th Cir. 2006) ............................................................................. 4, 5, 6, 8

## CALIFORNIA CASES

*Aronson* v. *Kinsella*,
  58 Cal. App. 4th 254 (1997) ........................................................................................ 6

*Blanchard* v. *DIRECTV*,
  123 Cal. App. 4th 903 (2004) ...................................................................................... 7

*Blank* v. *Kirwan*,
  39 Cal. 3d 311 (1985) .................................................................................................. 9

*Della Penna* v. *Toyota Motor Sales, U.S.A.*,
  11 Cal. 4th 376 (1995) ............................................................................................... 10

*Everest Investors 8* v. *Whitehall Real Estate Ltd. P'ship XI*,
  100 Cal. App. 4th 1102 (2002) ............................................................................. 10-11

*Farmers Ins. Exch.* v. *Superior Court*,
  2 Cal. 4th 377 (1992) ................................................................................................. 11

*Korea Supply Co.* v. *Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) .......................................................................................... 9, 10

*Rosenthal* v. *Irell & Manella*,
  135 Cal. App. 3d 121 (1982) ....................................................................................... 6

*Roth* v. *Rhodes*,
  25 Cal. App. 4th 530 (1994) ........................................................................................ 9

*Rubin* v. *Green*,
  4 Cal. 4th 1187 (1993) ......................................................................................... 6-7, 11

*Silberg* v. *Anderson*,
    50 Cal. 3d 205 (1990) .......................................................................................... 6

*Youst* v. *Longo*,
    43 Cal. 3d 64 (1987) ............................................................................................ 9

**FEDERAL RULES AND STATUTES**

Fed. R. Civ. P. 12(b)(6) ................................................................................... 1, 3, 5

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200 .................................................................. 2, 10, 11

Cal. Civ. Code § 47 ................................................................................................. 6

# MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff j2 Global, Inc. ("j2") respectfully submits this Motion to Dismiss Counts Three and Four of Defendants Open Text Corporation ("Open Text") and EasyLink Services International Corporation's ("EasyLink"; together, "Defendants") Amended Counterclaim.

## INTRODUCTION

Open Text and its wholly-owned subsidiary, EasyLink, asserted counterclaims under California law for tortious interference with prospective business advantage and unfair competition. The sole basis for the counterclaims is a single alleged statement: an unidentified representative of j2 supposedly told a potential customer that the customer would infringe j2's patents if it purchased EasyLink's service, with the alleged intention of frightening the customer into choosing j2's service instead. Of course, as this Court is aware, j2 is currently, and has been for years, actively litigating that precise issue with both Open Text and EasyLink. There can be no doubt that j2's statement (if it was even made) was referring to j2's pending litigation against Defendants and to the potential that the customer would also potentially be subject to a patent infringement lawsuit. As a result, under well-settled law, j2's alleged statement is privileged under the *Noerr-Pennington* Doctrine and the California litigation privilege, and cannot serve as the basis for liability as a matter of law. Defendants' tortious interference claim, and the unfair competition claim that is entirely derivative of it, should be dismissed without further leave to amend.

## BACKGROUND

j2 is a Los Angeles-based company that provides messaging and communications services, including fax-to-email services. (Am. Countercl. ¶ 23.) j2 filed this action on September 14, 2012, asserting that Defendants' fax-to-email services infringe U.S. Patent Number 6,020,980 (the "Patent-in-Suit"). j2 also holds many other patents related to fax-to-email technology, including U.S. Patent

Numbers 6,208,638, 6,350,066, 6,597,688 and 7,020,132.  Since 2004, j2 has been engaged in a lawful and protected campaign to protect and enforce its patents, with a significant number of those cases brought before this Court, including: *j2 Global Communications, Inc.*, *et al.* v. *Captaris, Inc.*, *et al.*, No. 09-4150 DDP (AJWx), *j2 Global Communications, Inc.* v. *EasyLink Services International Corporation*, No. 09-4189 DDP (AJWx); and *Advanced Messaging Technologies, Inc.*, *et al.* v. *EasyLink Services International Corporation*, No. 11-4239 DDP (AJWx).

On October 26, 2012, Defendants filed counterclaims against j2.  (Dkt. No. 20.)  Following meet and confer discussions concerning j2's intended motion to dismiss, Defendants amended the counterclaims pursuant to stipulation.  Counts Three and Four of the Amended Counterclaim purport to allege California state law claims of tortious interference with prospective business advantage and unfair competition under Cal. Bus. & Prof. Code § 17200, respectively.  Both claims are based on an alleged discussion between a j2 sales representative and a third-party, Intermedia.net ("Intermedia").[1]  (Am. Countercl. ¶¶ 19-33, 35.)  Intermedia is a provider of cloud computing services and allegedly is a potential customer and reseller of fax-to-email products.  (*Id.* ¶ 25.)

Open Text and its wholly-owned subsidiary, EasyLink, partner with third parties to market and resell software and services, such as EasyLink's Fax2Mail product.  (*Id.* ¶ 22.)  One of these partners allegedly is Advantage Technologies. (*Id.*)  According to Defendants, at some unspecified time in 2012 "Advantage Technologies was engaged in discussions with prospective customer Intermedia.net, Inc. [] regarding Intermedia's interest in offering fax-to-email services to its clients, and its potential purchase of EasyLink's Fax2Mail." (*Id.* ¶ 25.)  Defendants allege that "a representative or representatives of j2/eFax" told

---

[1] Defendants allege on information and belief that j2 has made similar statements to others, but provide no details to substantiate that claim.  (Am. Countercl. ¶ 24.)

- 2 -

Intermedia that "j2 owns patents that cover fax-to-email and web fax services, and that, as a result of j2's patent portfolio, no one other than eFax may legally provide fax-to-email and web fax services." (*Id.* ¶ 26.) Defendants also allege—notably, on information and belief—that j2 was aware of Intermedia's potential purchase of Fax2Mail from Advantage Technologies, but do not allege any facts suggesting that there was any real prospect that Intermedia might purchase Fax2Mail services. (*Id.* ¶ 27.) Likewise, Defendants allege the bare legal conclusion that j2 caused the loss of a prospective business relationship with Intermedia by suggesting that EasyLink's Fax2Mail product infringes j2's patents, but fails to allege facts that, if proven, would establish that. (*Id.* ¶ 32-33.)

## ARGUMENT

Defendants' tortious interference claim should be dismissed for three independent reasons: (i) j2's alleged statements are related to litigation or potential litigation and therefore are protected under the *Noerr-Pennington* doctrine; (ii) the alleged statements are protected under California's litigation privilege for the same reason; and (iii) the Amended Counterclaim fails to adequately plead the elements of tortious interference with a prospective business relationship. In addition, Defendants' unfair competition claim must be dismissed because it is derivative of the deficient tortious interference claim.

**I.   Legal Standard.**

Under Fed. R. Civ. P. 12(b)(6), a complaint may only survive a motion to dismiss if it alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). While the Court must accept all well-pleaded factual allegations, the Court is not required to (and cannot) accept as true "mere conclusory statements." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009); *In re Peerless Sys. Corp. Sec. Litig.*, 182 F. Supp. 2d 982, 987 (S.D. Cal. 2002) (legal conclusions need not be taken as true merely because they are cast in the form of factual allegations); *Clegg* v. *Cult Awareness Network*, 18

- 3 -

F.3d 752, 754 (9th Cir. 1994). Accordingly, "conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim." *McGlinchy* v. *Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). Under these well-established standards, Counts Three and Four of Defendants' Amended Counterclaim should be dismissed.

## II. Defendants' Tortious Interference Claim Should Be Dismissed.

### A. The *Noerr-Pennington* Doctrine Bars Defendants' Tortious Interference Claim.

Defendants' tortious interference claim is based solely on an alleged statement by a j2 sales representative to Intermedia that j2 owns patents that are infringed by its competitor's fax-to-email services, including EasyLink's Fax2Mail. (Am. Countercl. ¶ 26-28.) Under the *Noerr-Pennington* doctrine, persons who seek redress through the courts in order to enforce their patents are immune from state law tort claims. *Gen-Probe, Inc.* v. *Amoco Corp., Inc.*, 926 F. Supp. 948, 956 (S.D. Cal. 1996) ("*Noerr* immunity bars any claim, federal or state, common law or statutory, that has as its gravamen constitutionally-protected petitioning activity."); *see also Globetrotter Software, Inc.* v. *Elan Computer Group, Inc.*, 362 F.3d 1367, 1376-77 (Fed. Cir. 2004) ("[t]his extension of *Noerr* is based on the fact that 'the same First Amendment principles on which [*Noerr-Peninngton*] immunity is based apply to the [state-law] tort claims.'"). This protection is a reflection of the First Amendment right to petition.[2]

*Noerr-Pennington* immunity applies not only to litigation, but also to activity incidental or related to litigation. *See Sosa* v. *DIRECTV*, 437 F.3d 923, 935

---

[2] The only exception to *Noerr-Pennington* immunity is if the lawsuit or other enforcement action is a "sham." *Prof'l Real Estate Investors, Inc.* v. *Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993) ("*P.R.E.*"). A lawsuit is a "sham" if it is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *P.R.E.*, 508 U.S. at 60-61. Here, Defendants have alleged no facts to establish the "sham" litigation exception; in fact, nowhere in their counterclaims do Defendants assert that j2's claims are objectively baseless or a sham, nor could they.

- 4 -

(9th Cir. 2006) ("the law of this circuit establishes that communications between private parties are sufficiently within the protection of the Petition . . . so long as they are sufficiently related to petitioning activity.") This includes statements to parties concerning the subject of a current or potential lawsuit. *See Sosa*, 437 F.3d at 926-935.

In *Sosa*, DIRECTV obtained a list of over 100,000 customers who purchased a smart card that possessed the capability of descrambling DIRECTV's satellite signal. *Id.* at 926. DIRECTV contacted these customers and asserted that it had records showing that the customer used the smart card to illegally descramble signals, in violation of federal criminal statutes, and threatened civil litigation. *Id.* at 926-27. In fact, DIRECTV had no such records and did not know whether any particular customer actually had descrambled DIRECTV's signal. *Id.* The district court dismissed the customers' claims on a Rule 12(b)(6) motion under *Noerr-Pennington* even though DIRECTV's threats and assertions apparently were false. *Id.* at 935. The Ninth Circuit affirmed, holding that DIRECTV's assertions were related to a current or potential lawsuit, and therefore constituted petitioning activity protected by *Noerr-Pennington*. *Id.* at 933-39; *see also Globetrotter Software,* 362 F.3d at 1376.

Here, as in *Sosa*, j2 cannot be liable for communicating to Intermedia that others, including the EasyLink Fax2Mail product, infringe j2's patents. *See* 437 F.3d at 935. The alleged communication between j2 and Intermedia clearly references potential patent litigation—j2 allegedly tried to dissuade Intermedia from purchasing the Fax2Mail service, which is accused of infringing four j2 patents in Case No. 11-4239 pending before this Court, by stating that others cannot "legally" provide fax-to-email services. (Am. Countercl. ¶ 26.) It is difficult to see how a reference to the legality of using other services in view of j2's patents could be construed as anything other than a reference to potential litigation should Intermedia choose EasyLink's infringing service.

- 5 -

In their Amended Counterclaim, Defendants try to avoid the *Noerr-Pennington* doctrine by adding an allegation that this "statement was not a comment on any existing and/or contemplated litigation." (*Id*.) But that conclusory statement is directly contradicted by Defendants' pleading and should be disregarded. Defendants allege that j2's objective in making the statement to Intermedia was to "create the false impression that a customer must only purchase fax-to-email or email-to-fax services from j2, otherwise they will infringe j2's patents," in order to "induce unwarranted fear and hesitation." (*Id*. ¶ 24.) Telling someone that they potentially infringe your patents in order to induce fear is, put simply, a threat of litigation, which is squarely within *Sosa* and protected by the First Amendment. *See Sosa*, 437 F.3d at 933-35.

### B. Defendants' Tortious Interference Claim Is Barred by the California Litigation Privilege.

The California litigation privilege provides independent protection for j2's alleged statement to Intermedia. Cal. Civ. Code § 47. The litigation privilege provides that a party's litigation-related statements cannot subject it to liability, if they: (1) are made in a judicial proceeding, (2) have some connection or logical relationship to the action, (3) are made to achieve the objects of the litigation, and (4) are made by litigants or other participants authorized by law. *See Silberg* v. *Anderson*, 50 Cal. 3d 205, 212 (1990) (collecting cases); *Rosenthal* v. *Irell & Manella*, 135 Cal. App. 3d 121 (1982) (applying § 47 to a tortious interference claim).

The litigation privilege protects j2's alleged communication for at least four reasons. *First*, the privilege applies to communications made during litigation as well as those made by a party contemplating litigation with good faith and serious consideration. *See Aronson* v. *Kinsella*, 58 Cal. App. 4th 254, 262 (1997) (applying litigation privilege to a pre-suit threat); *Rubin* v. *Green*, 4 Cal. 4th 1187, 1193-94 (1993) ("California courts have given the privilege an expansive reach"

- 6 -

and "numerous decisions" have determined that the privilege is applicable to pre-litigation communications); *Blanchard* v. *DIRECTV*, 123 Cal. App. 4th 903, 919 (2004) (litigation privilege "has been broadly applied to demand letters"). As discussed above, Defendants allege that j2's statements were intended to communicate to potential customers that using EasyLink's service would infringe j2's patents; this is exactly the kind of pre-suit communication the litigation privilege protects. (Am. Countercl. ¶ 24.)

*Second*, the alleged communication relates to this action because it informed EasyLink's potential customer of the suit and the infringement allegations against Defendants. *See eCash Techs., Inc.* v. *Guagliardo*, 210 F. Supp. 2d 1138, 1152 (C.D. Cal. 2001) (holding that "a communication merely informing a third party of the *pendency* of [] litigation must clearly fall within the privilege"). Like a cease-and-desist letter that is absolutely protected by the privilege, j2 communicated to Intermedia that by purchasing EasyLink's service, Intermedia would infringe j2's patents. (Am. Countercl. ¶ 24.) Again, Defendants' conclusory allegation that the statement did not refer to a specific litigation does not avoid the privilege. (*Id.*) Defendants allege that the statement was intended to, and did, prevent Intermedia from purchasing EasyLink's Fax2Mail service—the subject of a pending patent infringement lawsuit—because of concerns about patent infringement. (*Id.* ¶¶ 28, 32.) Such a communication unquestionably relates to the pending EasyLink suit and is therefore privileged.

*Third*, the litigation privilege applies to communications with any person that has a "substantial interest in the outcome of [the instant] litigation." *Sharper Image Corp.* v. *Target Corp.*, 425 F. Supp. 2d 1056, 1079 (N.D. Cal. 2006). Defendants' potential customers have a "substantial interest" in the outcome of this action because they may be subject to liability for infringing j2's patents. *See id.* (holding that where patentee sued a competitor for infringement, customers of the allegedly infringing product had a "substantial interest" in the litigation

because the lawsuit sought an injunction that would have disrupted their business, and a finding of infringement would have "significantly increased the legal liability of the letter recipients"). j2 is entitled to inform Intermedia of this potential because statements related to litigation by a patentee to third-parties who are considering whether to buy an alleged infringer's products are protected by the litigation privilege. *See Reid-Ashman Mfg.* v. *Swanson Semiconductor Serv., L.L.C.*, 2007 U.S. Dist. LEXIS 37665 (N.D. Cal. May 10, 2007); *Bylin Heating Sys.* v. *M&M Gutters, LLC*, 2008 U.S. Dist. LEXIS 21253, at *10-13 (E.D. Cal. Mar. 18, 2008).

*Fourth*, the Federal Circuit has held that there is nothing improper about a patentee attempting to enforce its rights under a patent by advising infringers of its good faith belief that a competitor's product infringes. *Scosche Indus., Inc.* v. *Visor Gear, Inc.*, 121 F.3d 675, 681 (Fed. Cir. 1997); *Mallinckrodt, Inc.* v. *Medipart, Inc.*, 976 F.3d 700, 709 (Fed. Cir. 1992) (holding that a patentee with "a good faith belief that its patents are being infringed violates no protected right when it so notifies infringers").[3]

Because the California litigation privilege protects the communication at issue here, Defendants' counterclaims fail as a matter of law.

### C. Defendants Have Not Adequately Pled a Tortious Interference Claim.

Defendants' Amended Counterclaim fails to properly plead tortious interference with prospective business relationships. That claim requires "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant

---

[3] It does not matter that Defendants allege that j2's statement was false. *Sosa*, 437 F.3d at 935-41; *Scosche*, 121 F.3d at 681 (stating that "it is not an actionable wrong" to insist on patent rights even if the patentee "may misconceive what those legal rights are").

- 8 -

designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co.* v. *Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153-54 (2003) (quotations omitted).

*First*, Defendants have not alleged any economic relationship with Intermedia with the probability of future economic benefit to the plaintiff. To state a claim for interference with a prospective business relationship, there is a "threshold requirement of a probability of the prospective economic benefit." *Youst* v. *Longo*, 43 Cal. 3d 64, 74 (1987). Therefore, Defendants must allege that they had a "protectible expectancy" in obtaining an economic benefit from its *reseller* Advantage Technologies, not just a "hope" or "desire" for some future benefit. *Blank* v. *Kirwan*, 39 Cal. 3d 311, 330 (1985); *Roth* v. *Rhodes*, 25 Cal. App. 4th 530, 546 (1994) (holding that speculative future customers cannot form the basis of an existing business relationship).

Here, Defendants allege a relationship with a third-party reseller, Advantage Technologies. (Am. Countercl. ¶ 25.) Only Advantage Technologies communicated with Intermedia, which allegedly was interested in offering fax-to-email services to its own customers as another reseller. (*Id.*) Defendants allege no facts that would establish that Intermedia was seriously considering purchasing from Advantage or that such a purchase was probably, as opposed to just hoped-for. (*Id.*) Moreover, any possible economic benefit to EasyLink would involve multiple levels of resellers: the sale of Fax2Mail from EasyLink to Advantage Technologies, then the resale of Fax2Mail from Advantage Technologies to Intermedia, and even Intermedia's sale of Fax2Mail to its customers. (*Id.*) The possibility of future economic benefit to EasyLink[4] stemming from Intermedia's

---

[4] To the extent there are any allegations at all about a prospective economic benefit, they concern EasyLink's Fax2Mail service, rather than any product or service offered by Open Text directly. (Am. Countercl. ¶ 25.) Defendants allege nothing that would suggest Open Text had a prospective relationship

customers is too speculative and remote to state a claim, particularly in light of the near-total lack of allegations suggesting that any such benefit may materialize. As in *Rhodes*, a speculative future customer does not satisfy the element of Defendants' claim requiring the existence of a business relationship. 25 Cal. App. 4th at 546.

*Second*, Defendants must also establish that j2's conduct was *independently wrongful* separate and apart from its alleged impact on a prospective relationship. *Della Penna* v. *Toyota Motor Sales, U.S.A.*, 11 Cal. 4th 376, 393 (1995). Conduct is independently wrongful only if "it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply*, 29 Cal. 4th at 1159. Defendants do not allege any independently wrongful conduct. It is not enough to allege that j2 tried to dissuade potential customers from purchasing EasyLink's service. *See Michaluk, D.O.* v. *Vohra Health Services, P.A.*, 2012 WL 3993940, at *7 (E.D. Cal. Sept. 11, 2012). The Amended Counterclaim fails to explain how j2's alleged conduct was unlawful, and therefore does not plead a claim for interference with prospective business relationships. *See Della Penna*, 11 Cal. 4th at 393.

### III. Defendants' Unfair Competition Claim Is Entirely Derivative of Their Tortious Interference Claim and Should Be Dismissed for the Same Reasons.

Count Four of Defendants' Amended Counterclaim alleges unfair competition under California's Business and Professions Code § 17200. This make-weight claim is entirely based on, and derivative of, Defendants' tortious interference claim. (Am. Countercl. ¶ 35.) Because that claim fails as a matter of law, so too must its "tag along" Section 17200 claim. *See Everest Investors 8* v. *Whitehall Real Estate Ltd. P'ship XI*, 100 Cal. App. 4th 1102, 1108 (2002)

---

with Intermedia, so at a minimum the claim should be dismissed as to Open Text.

(sustaining demurrer to unfair business practices claim where claim was "based entirely" on failed breach of fiduciary duty claim because "unfair business practices claim requires proof that another law has been violated"); *Silicon Knights, Inc.* v. *Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1316 (N.D. Cal. 1997) ("Since most of Plaintiff's causes of action fail to state claims for relief against Individual Defendants, there is no underlying basis for the unfair competition claims as alleged against these Defendants.").

The California Supreme Court has stated that Section 17200 "borrows" violations of other laws, statutes and regulations and treats them as independently actionable, and provides remedies (such as restitution) that may not otherwise be available. *See Farmers Ins. Exch.* v. *Superior Court*, 2 Cal. 4th 377, 383 (1992). Defendants may not, as a matter of law, circumvent "barriers to relief by relabeling the nature of the action as one brought under the unfair competition statute." *Rubin*, 4 Cal. 4th at 120. Defendants do not specify the basis for their unfair competition claim, but refer only to the constitutionally-protected, privileged speech described elsewhere. (Am. Countercl. ¶ 35.) This does not state an unfair competition claim.

## **CONCLUSION**

For the foregoing reasons, j2 respectfully requests that the Court dismiss Counts Three and Four of Defendants' Amended Counterclaim with prejudice.

Dated:  January 11, 2013                                         Respectfully submitted,


/s/ Robert A. Sacks
Robert A. Sacks (SBN 150146)
Brian R. England (SBN 211335)
Edward E. Johnson (SBN 241065)
SULLIVAN & CROMWELL LLP
1888 Century Park East, Suite 2100
Los Angeles, California 90067-1725
(310) 712-6600
(310) 712-8800 facsimile

Frank L. Bernstein (SBN 189504)
KENYON & KENYON LLP
1801 Page Mill Road, Suite 210
Palo Alto, California 94304-1216
(650) 384-4700
(650) 384-4701 facsimile

*Attorneys for Plaintiff and Counterclaim-Defendant j2 Global, Inc.*